870        NEBRASKA REPORTS.        [VOL. 32

State, ex rel. Happner, v. County of Fillmore.

STATE, EX REL. JOSEPH HAPPNER, v. COUNTY OF FILL-
MORE ET AL.

[FILED SEPTEMBER 22, 1891.]

**Mandamus:** ENFORCING INJUNCTION AGAINST COUNTY:
DITCHES. The relator brought an action in the district court of
F. county against the said county and the individuals constitut-
ing the county board thereof, alleging in his petition, that the
said county had unlawfully dug a ditch by means of which the
water which falls upon about one thousand acres of land, and
formerly found its way into a large number of sags, swamps,
and low places thereon, was discharged upon the lands, farm,
and homestead of the relator, which were on a lower level, etc.,
with prayer for an injunction, and for general relief. The dis-
trict court made and entered a decree perpetually enjoining the
respondents from discharging any of the water which accumu-
lated in the sags and swamps on the lands described in the said
petition, by means of ditches or otherwise, excepting the natural
overflow only onto a certain parcel of land, describing it, belong-
ing to the said relator, with judgment for the relator for costs.
After some delay the relator applied to this court for a peremp-
tory writ of *mandamus* to enforce the duty imposed upon the
said county, and county board, by the said decree of the district
court. *Held,* That it not appearing that such duty could not be
enforced by the district court in the due course of law, a *man-
damus* for that purpose would be denied in this court.

ORIGINAL application for *mandamus.*

*Billings & Billings,* for relator.

*W. C. Sloan, contra.*

COBB, CH. J.

This is an original application to this court by Joseph
Happner for a *mandamus* against the county of Fillmore
and William J. Hildreth and others constituting the board
of supervisors of said county. The petition of the relator

sets forth that he is a resident freeholder, taxpayer, and voter of Fillmore county, and the owner of certain lands in said county in said petition · described, and that said property is his home and homestead.

Second—That during the year 1883 and up to and including the year 1885, the county of Fillmore unlawfully caused to be dug about one mile of ditch, by means of which the water which formerly fell onto about 1,000 acres of land, and found its way by surface descent into a large number of sags, swamps, and low places thereon, was drained and discharged onto the said land of petitioner, which is on a slightly lower level.

Third—That on the 15th day of August, 1888, petitioner commenced an action in the district court of Fillmore county, the object and prayer of which was to restrain said respondent county from further unlawfully discharging the water aforesaid, by means of said ditches or otherwise, onto the lands of petitioner. That issue was duly joined therein and the case was finally tried and determined by the said court on the first day of August, 1889, and the following judgment and decree was entered by the said court and was by the said court duly rendered.

Then follows a copy of decree rendered in the district court of Fillmore county on the first day of August, 1889, wherein it is recited that on consideration, the said court finds:

First—That said defendant now is and has been the owner, and enjoying the peaceful possession, of the north-east quarter of section 4, township 6 north, of range 3 west, of the 6th principal meridian in Fillmore county ever since the year 1880, which is the home and homestead of said plaintiff and family, of the value of $5,000.

Second—That said land now is, and during said time has been, all except twenty acres, plowed, farmed, and cultivated by said plaintiff, and said twenty acres is wild grass

872          NEBRASKA REPORTS.          [VOL. 32

State, ex rel. Happner, v. County of Fillmore.

land, fenced and used as pasture and is good land to break and cultivate crops on.

Third—That there is situated on the south half of section 4, the north half of section 9, the northeast quarter of section 8, and the southeast quarter of section 5, a large number of sags and swamps wherein accumulates surface water, and that they have no natural outlet, and all of said lands are on a higher level than said lands of plaintiff.

Fourth—That in August, 1883, and thereafter during the years 1884 and 1885, the said defendants, without any lawful authority, and in violation of the rights of said plaintiff, commenced and completed about one mile of ditch, completely draining all of said sags and swamps and discharging waters which formerly accumulated thereon by means of said ditches upon the lands of said plaintiff, overflowing in the wet season of the year a strip of land across said plaintiff's farm in a zigzag course of 3,470 feet, overflowing in the wet season from one to two rods wide, the whole of said distance, and the water running there is cutting or digging in the bottom of said draw to the injury of plaintiff, and said injury will continue forever and is and will continue to be great and irreparable.

Fifth—That the proceedings had by the county commissioners were not as by law provided and are void. It is therefore considered by the court that the defendant be and is hereby perpetually enjoined from discharging any of the water which accumulates in the sags and swamps on the following lands, namely : (describing the said lands), by means of ditches or otherwise, in any manner except by the natural overflow only, onto the northeast quarter of section 4, township 6, range 3 west, in Fillmore county, belonging to said Joseph Happner, plaintiff herein, and that the plaintiff recover from the defendant his costs in this case taxed at $———.

Fourth—That this action was not commenced sooner for the reason that defendants promised to obey the order

of court, and several of the members of said board promised to petitioner that they would fill the said ditch or dig another ditch in another direction to drain said swamps. And thereafter negotiations were begun looking toward an arrangement by which your petitioner would receive the water aforesaid, it being desirable to drain the said land, for if the said ditches be filled up, the swamp which had been in a measure redeemed would again be rendered nearly worthless. And the defendant county caused a survey to be made and found another way by which the said water could be carried away and no longer discharged onto the lands of your petioner, but that petitioner now believes that said defendants had and have no intention of doing anything, and unless he obtains relief from this honorable court he has no remedy whereby he may protect his property.

Fifth—That petitioner caused a notice to be served on all of said defendants (a copy of which notice is set out in the petition), whereby he demanded that said defendants proceed in some of the ways in their power to obey the order of the said district court, but they wholly failed, neglected and refused, and still refuse to obey the same.

Sixth—That since the time of rendering the aforesaid decree there has been heavy rains on many different occasions, and the waters which collected on the swamp lands aforesaid were all discharged by the ditches unlawfully dug so as aforesaid by the defendant county, onto the lands of the petitioner, causing him great damage and inconvenience in the loss of fences, crops, etc., and extra trouble in getting around on his said farm.

Seventh—That petitioner has caused to be served on W. C. Sloan, county attorney of Fillmore county, a true copy of this petition and a notice, which notice is set forth as an exhibit; with prayer that writs of *mandamus* issue against the said defendants and that they be commanded to obey the said order of the district court and prevent the further discharge of water onto the lands of petitioner

by means of said ditches or otherwise, and for general relief.

The answer filed by W. C. Sloan for the county of Fillmore admits the first, second, and third paragraphs of the petition to be true. That soon after the entering of the decree set forth in the petition, negotiations were commenced looking to the drainage of said lands in another direction, and surveys were made for that purpose, but after extended surveys were made it was determined by the county surveyor that said lands could not be drained in any other direction or place than across the lands of plaintiff without great expense, far in excess of what the board of supervisors could be warranted in expending for such purposes. That negotiations were then commenced with the plaintiff, looking to the purchase of the right to discharge the said waters from said ditch across the lands of plaintiff, and that said negotiations were still pending on the — day of ———, 1890, when the plaintiff served notice upon the board of commissioners of Fillmore county, notifying them that they must fill up the said ditch. That at the time of the receiving of said notice, the board of supervisors were sitting as a board of equalization, and had no authority to act in any other capacity as a board, and that since said notice was received there has been no regular meeting of the board, but that their next regular meeting would be on the 15th day of July, 1890, at which time the necessary order would be made to comply with the said order and decree as rendered by the said district court; that the delay in making the necessary order to comply with said order and decree was caused by the honest efforts of the said board of supervisors of said county, to either compromise said matter, or find another outlet for the said water, and for no other purpose. The defendants further submit that this court has not jurisdiction to enforce the order of an inferior court, no application having been

first made to the court having original cognizance of the case and which made the original order.

At the September term, 1890, the county attorney presented a supplemental answer which he asked leave to file in the case. This answer alleged that since the last continuance of this case the said board of supervisors have complied with the order of the said district court in said case, and that said ditch has been filled so that nothing but the natural overflow can reach the land of the plaintiff in this suit; and defendants further say that the said ditch was filled as soon as practicable after the negotiation set forth in the answer heretofore filed had failed. Motion to file said supplementary answer was duly submitted to the court, but it does not appear that the same has ever been acted upon. The case was fully submitted on the same day. No evidence was offered on either side.

In the view that I take of the case, it is not important whether the said supplementary answer be considered before the court or not. The relator files a brief in the case, but the only citations of authorities or arguments which he makes is to the point that this court has original jurisdiction in cases of *mandamus*, and that the decree of the district court imposes a duty upon the county board; and the general proposition that *mandamus* will lie to enforce the performance of an official duty resting upon a public officer or board. But it does not suggest that the district court of Fillmore county is unable to enforce its orders or decrees, and it is of the very essence of the remedy by *mandamus* that it lies only in cases where the relator is without an adequate remedy in the due course of law. It appears in this case that the relator applied to the district court, which was the proper tribunal to adjust his wrong; that he proceeded to final decree, but it does not appear that he has ever applied to that court to enforce that decree. Until such application is made, and it is made to appear that that court is unable to enforce its decrees, and

thereby afford him the relief which he seeks, it is not deemed advisable for this court to take up the case on its merits. The application for a peremptory *mandamus* is therefore

DENIED.

THE other judges concur.